**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BOCCARD USA CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0177 |
| | § | |
| TIGPRO, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

In this suit, a Texas company, Boccard USA Corporation, sues a Maine company, TigPro, Inc., over a contract for construction work in New Hampshire.  TigPro asks this court to abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in favor of a suit that TigPro filed against Boccard in New Hampshire two weeks before Boccard sued TigPro in Texas.  (Docket Entry Nos. 9, 11).  Boccard has responded to TigPro's motion, (Docket Entry No. 15), TigPro has replied, (Docket Entry No. 16), and Boccard has supplemented its response, (Docket Entry No. 17).  Based on the motion, response, and reply, the parties' submissions, the record, and the applicable law, this court denies the motion to dismiss or stay.  The reasons are set out in detail below.

**I.     Background**

Boccard USA Corporation is a Texas pipe manufacturing and pipe fitting company with its principal place of business in Houston, Texas.  TigPro, Inc. is a Maine corporation that designs, fabricates, and installs piping systems in food and beverage manufacturing

1

facilities.  TigPro's headquarters are in Gray, Maine.

On May 31, 2006, Boccard and TigPro executed a Purchase Order under which TigPro would provide labor, supervision, equipment, and materials for renovating a dairy farm owned by Boccard's client, Stonyfield Farm, Inc.  The work was to be done in Londonderry, New Hampshire, where Stonyfield Farm's facility was located.  The Purchase Order Terms and Conditions included the following choice-of-law and forum-selection clause:

> GOVERNING LAW.  This Purchase Order shall be governed by and interpreted in accordance with the laws of the State of Texas.  No court proceedings pertaining to this Purchase Order may be initiated other than in federal or state courts located in Harris County, Texas, and Seller hereby consents to the jurisdiction of these courts.

(Docket Entry No. 15, Ex. A).  The Purchase Order called for Boccard to pay a $100,000.00 down payment toward TigPro's work within ten days of receipt of the invoice for the down payment and for progress payments to be made within 15 days of receipt of weekly invoices. (*Id.*).

Boccard paid TigPro the initial payment called for in the Purchase Order and TigPro began work.  A dispute arose in the fall of 2006 over TigPro's work.  Boccard refused to pay for certain services and materials that TigPro had provided and invoiced.  Boccard asserted that TigPro overcharged for its work, charged for labor that had not been performed and for materials that were not used on the project, and that the work was slow and frequently deficient.  TigPro maintained that it was owed the amounts it had invoiced, in excess of

2

$750,000.00.

Discussions aimed at resolving the dispute failed.  On November 14, 2006, TigPro wrote to Boccard demanding full payment by the next day.  On November 15, Boccard terminated the Purchase Order and informed TigPro that it would investigate and decide whether to pay the amounts TigPro claimed were due or to seek compensation for overpayments to TigPro.

On November 16, 2006, TigPro sued Boccard and Stonyfield Farm in New Hampshire state court, seeking payment of the amounts billed under the Purchase Order.  That case is styled *TigPro, Inc. v. Boccard USA Corp., et al.*, No. 06-C-0937, in the Superior Court of Rockingham, New Hampshire.  TigPro asserted claims under New Hampshire state law.  Specifically, TigPro asserted state common-law claims for breach of contract and for breach of the duty of good faith and fair dealing against Boccard and for *quantum meruit* and unjust enrichment against Boccard and Stonyfield Farm; statutory claims for deceptive and unfair business practices against Boccard; and a statutory claim to enforce a mechanic's lien against Boccard and Stonyfield Farm.  (Docket Entry No. 15, Ex. H).  On November 17, TigPro obtained an *ex parte* writ of attachment for a prejudgment mechanic's lien on the Stonyfield Farm facility.  On November 21, 2006, TigPro gave Boccard notice of the suit.

On November 30, 2006, Boccard filed this suit against TigPro in state court in Harris County, Texas.  Stonyfield Farm is not a party to the Texas action.  Boccard seeks damages for overpayments to TigPro and other alleged losses.  Boccard asserted Texas state-law claims for breach of contract, fraudulent and negligent misrepresentation, and unjust

3

enrichment.  On January 17, 2007, TigPro timely removed to this court based on federal diversity jurisdiction.[1]

In the New Hampshire case, Boccard moved to dismiss based on the Texas venue provision in the parties' Purchase Order.  TigPro opposed the motion on the basis of the New Hampshire statute governing contractual venue provisions.[2]  TigPro argued that only a New Hampshire court could enforce the mechanic's lien and that Texas would be substantially less convenient for trial than New Hampshire, where the construction work under the Purchase Order had taken place.  On January 22, 2007, the New Hampshire Superior Court denied

---

[1] Boccard served TigPro through the Texas Secretary of State, which forwarded a copy of the citation and petition to TigPro's agent for process in Maine on December 19, 2006.  (Docket Entry No. 1 at 1).  TigPro timely removed on January 17, 2007, within 30 days after service.  28 U.S.C. § 1446(b).  *See Monterey Mushrooms, Inc. v. Hall*, 14 F. Supp. 2d 988, 991 (S.D. Tex. 1998) ("When service is effected on a statutory agent, the removal period begins when the defendant actually receives the process and not when the statutory agent receives process.").

[2] That statute states:

> If the parties have agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court will dismiss or stay the action, as appropriate, unless:
>
> I.     The court is required by statute to entertain the action;
>
> II.    The plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action;
>
> III.   The other state would be a substantially less convenient place for the trial of the action than this state;
>
> IV.    The agreement as to the place of the action was obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; or
>
> V.     It would for some other reason be unfair or unreasonable to enforce the agreement.

N.H. REV. STAT. § 508-A:3.

4

Boccard's motion to dismiss. No statement of reasons accompanied the ruling. Boccard appealed. On May 16, 2007, the New Hampshire Supreme Court dismissed on the ground that the Superior Court's decision was interlocutory and not appealable. (Docket Entry No. 11). On June 4, 2007, the New Hampshire Superior Court, "prefer[ing] to err on the side of caution," granted Boccard's request for an interlocutory appeal to the New Hampshire Supreme Court. (Docket Entry No. 17). Although the New Hampshire Superior Court has entered a scheduling order and some discovery has begun, that case is currently awaiting a decision from the New Hampshire Supreme Court on Boccard's interlocutory appeal.

TigPro invokes *Colorado River* abstention and asks this court to dismiss or stay. Boccard opposes on the basis of the parties' contractual agreement that venue would be in Texas.

## II.    The Applicable Legal Standard

"As a general rule, federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction in proper cases." *Colorado River*, 424 U.S. at 817. "This obligation does not evaporate simply because there is a pending state court action involving the same subject matter." *Id.* at 813–14. Federal courts may abstain from deciding an action to preserve "traditional principles of equity, comity, and federalism." *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1189 (5th Cir. 1988); *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir. 1990)). Whether a federal court should abstain from hearing an action under one of the abstention doctrines is in the court's discretion. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 n.7 (5th Cir. 2006) (quoting *Nationwide Mut. Ins. Co. v. Unauthorized*

5

*Practice of Law Comm.*, 283 F.3d 650, 652 (5th Cir. 2002)).

"[T]he potential for conflict" between a federal action and a parallel state action, standing alone, does not "justify staying of the exercise of federal jurisdiction" under the *Colorado River* abstention doctrine. *Colorado River*, 424 U.S. at 816. As the Supreme Court explained,

> Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. This difference in general approach between state-federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

*Id.* at 817 (citations omitted). Rather than simply considering potential "conflict" between state and federal litigation, "[t]he policies underlying *Colorado River* abstention are 'considerations of "[w]ise judicial administration," giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.*

As the Supreme Court also explained, "[g]iven this obligation [to exercise jurisdiction given to federal courts], and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention [under previously recognized doctrines]." *Id.* at 818; *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.*, 48 F.3d 294, 298 n.4 (8th Cir. 1995) ("Because the

policy underlying *Colorado River* abstention is judicial efficiency, this doctrine is substantially narrower than are the doctrines of *Pullman*, *Younger* and *Burford* abstention, which are based on 'weightier' constitutional concerns.").  A federal court may abstain in order to conserve federal judicial resources only in "exceptional circumstances." *Colorado River*, 424 U.S. at 813.  Those "exceptional circumstances" must be such that "'repair to the State court would clearly serve an important countervailing interest.'" *Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 14 (1983) (quoting *Colorado River*, 424 U.S. at 813). This is true "even if diversity of citizenship is the only jurisdictional foundation," as is the case here.  *BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir. 1995).

*Colorado River* abstention only applies if there are parallel state and federal court proceedings.  *See Brown*, 462 F.3d at 395 n.7; *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("The principles of *Colorado River* are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions.'").  Suits are parallel if they "involv[e] the same parties and the same issues." *Republic Bank Dallas, Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (quoting *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973)); *see Brown*, 462 F.3d at 395 n.7 (quoting *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 734 (9th Cir.1991)).  Mere "commonality of subject matter does not amount to the 'contemporary exercise of concurrent jurisdictions.'" *See Dittmer*, 146 F.3d at 118.  Most courts define "parallelism" for purposes of *Colorado River* abstention in terms of "substantially the same parties" litigating "substantially the same issues." *See, e.g.*, *Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000); *McIntosh*, 828 F.2d at 1121;

7

*Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 402 (10th Cir. 1995); *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991), *cert. denied*, 503 U.S. 971 (1992); *Day v. Union Mines, Inc*., 862 F.2d 652, 655 (7th Cir. 1988).

If state and federal suits are parallel, the federal court must then evaluate whether there are "exceptional circumstances" that make abstention appropriate.  The Supreme Court has identified the following factors to guide the analysis:

> (1)    whether there is a *res* over which one court has established jurisdiction;
>
> (2)    the inconvenience of the federal forum;
>
> (3)    whether maintaining separate actions may result in piecemeal litigation;
>
> (4)    which case has priority—not simply looking at which case was filed first; rather, focusing on the relative progress made in each case;
>
> (5)    whether state or federal law controls; and
>
> (6)    the adequacy of the state forum to protect the federal plaintiff's rights.

The first four factors are explicitly identified in *Colorado River*, 424 U.S. at 818.  The Court added the fifth and sixth factors in *Moses H. Cone*, 460 U.S. at 23, 26.

The Supreme Court has cautioned that "[t]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case."  *Moses H. Cone*, 460 U.S. at 16.  These factors are "to be applied in a pragmatic, flexible manner with a view

to the realities of the case at hand." *Id.* at 21.  In examining these factors, "the balance [is]

heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16.  As the Court explained:

> We emphasize that our task in cases such as this is not to find
> some substantial reason for the exercise of federal jurisdiction by
> the district court; rather, the task is to ascertain whether there
> exist "exceptional" circumstances, the "clearest of justifications,"
> that can suffice under *Colorado River* to justify the surrender of
> that jurisdiction.

*Id.* at 25–26.

The issue presented by TigPro's motion is whether this case presents "the clearest of

justifications [that alone] will warrant" abstention. *Colorado River*, 424 U.S. at 819; *Murphy*

*v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999).  The threshold issue—whether the

cases are parallel—and the *Colorado River* factors are analyzed below.

## III.    Analysis

### A.    Parallel Cases

The threshold issue is whether the New Hampshire suit and this federal suit are

"parallel."  Although the New Hampshire case includes a defendant that is not a party in the

Texas suit—Stonyfield Farm—"a mincing insistence on precise identity" of parties and issues

is not required.  *McIntosh*, 828 F.2d at 1121; *see also Caminiti & Iatarola, Ltd. v. Behnke*

*Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992); *MidTexas Int'l Ctr., Inc. v.*

*Myronowicz*, No. 3:05-cv-1957, 2006 WL 2285581, at *2 (N.D. Tex. Aug. 9, 2006).  The

central inquiry is whether there is a substantial likelihood that the state litigation will dispose

of all claims presented in the federal case.  *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592

9

(7th Cir. 2005); *Rowley v. Wilson*, No. 05-30189, 2006 WL 2233221, at *1 (5th Cir. Aug. 4, 2006) (unpublished opinion) (holding that suits were not parallel for *Colorado River* abstention purposes because some defendants were in the federal case and not present in the state suit, and in the federal case, the plaintiff asserted claims against those defendants not asserted in the state suit).

TigPro sued Boccard and Stonyfield Farm in New Hampshire, asserting claims for breach of contract and fraud based on Boccard's failure to pay TigPro's invoices for work under the May 31, 2006 Purchase Order. In the New Hampshire state-court suit, TigPro asserted a breach of contract claim, alleging that Boccard had "failed and/or refused to pay TigPro for its labor and materials in accordance with the parties' contract" and had wrongfully terminated the contract. TigPro also asserted a *quantum meruit*/unjust enrichment claim, asserting that TigPro had conferred a benefit on Stonyfield Farm and Boccard by providing work and materials to the project. TigPro also asserted a state deceptive trade practices act claim against Boccard, alleging that it failed or refused to pay TigPro for services and materials provided under the Purchase Order with "no legitimate basis for delaying payment." (Docket Entry No. 9, Ex. A). TigPro also asserted a claim to enforce the mechanic's lien securing the amounts allegedly due for the labor and materials provided under the Purchase Order. Finally, TigPro asserted a claim against Boccard for breach of a duty of good faith and fair dealing implied in the parties' Purchase Order contract. Boccard has not counterclaimed in the New Hampshire suit.

Two weeks later, Boccard sued TigPro in Houston, asserting that TigPro owes it

money for overpayments under the Purchase Order and for breach of extracontractual duties. Stonyfield Farm is not a party to this suit.  Boccard asserted a breach of contract claim for TigPro's allegedly late and deficient work under the Puchase Order.  Boccard alleged that TigPro had failed "to act, work, or bill on the Project in good faith, or in an appropriate, timely, workmanlike, or professional manner."  Boccard also asserted a fraudulent/negligent misrepresentation claim, alleging that in the invoices, TigPro made false statements about the "amount, nature, and quality of the work."  Boccard also asserted an unjust enrichment cause of action, alleging that TigPro had obtained benefits through inflated billings.  Boccard sought in excess of $900,000.00 in actual damages and alleged a right to exemplary damages.  TigPro has not counterclaimed in the federal-court suit.

The fact that one party to the state-court suit is not a party in the federal suit does not itself determine whether the state case is parallel.  The central question is whether the issues in this federal suit would be resolved by a decision in the New Hampshire state-court suit. "The question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state-court] litigation will dispose of all claims presented in the federal case." *TruServ Corp.*, 419 F.3d at 592.  "[A]ny doubt regarding the parallel nature of the [state-court] suit should be resolved in favor of exercising jurisdiction."  *Id.*

The New Hampshire case is based on TigPro's claim that Boccard owes it more money under the Purchase Order, with the lien against the Stonyfield Farm facility to secure any debt arising from a finding of liability and award of damages.  Boccard has not counterclaimed in the New Hampshire case to raise its tort claims for fraud and negligent misrepresentation or

11

to assert its breach of contract claim that it is entitled to a refund of money it has already paid TigPro. The Texas case is based on Boccard's claim that TigPro must pay back money it received under the Purchase Order and pay damages for the tort claims. TigPro has not counterclaimed in the Texas case to raise its breach of contract, extracontractual, and statutory collection claims against Boccard.

The courts appear to agree that "[w]hile it may be true . . . that [a state-court proceeding] could be modified so as to make it identical to the current federal claim, . . .[t]he issue is whether [the state-court proceeding], as it *currently* exists, is a parallel, state-court proceeding.'" *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994). In *Baskin*, the court considered whether a state-court action filed by homeowners challenging a zoning variance that allowed a residential-property owner to place radio towers and antennae on his property was parallel to a federal-court action filed by the property owner challenging the same variance on constitutional grounds. In the state-court action, the homeowners challenged the variance as going too far. In the federal-court action, the property owner challenged the variance as not going far enough. The federal district court dismissed the federal action under the *Colorado River* doctrine. The court of appeals found that the actions were not parallel, making abstention improper. The court found that even though the two cases arose out of the same basic facts, the parties raised different challenges to the same variance and sought different kinds of relief. The court rejected the argument that the plaintiff in the federal-court action could have raised those claims in the state-court suit, noting that "in deciding whether a state action is parallel for abstention purposes, the district court must

compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised." *Id.*

Similarly, in *TruServ Corp.*, 419 F.3d at 592, the court considered whether a state- and federal-court suit filed weeks apart were parallel for *Colorado River* abstention purposes. Both cases involved the owners of a hardware store and the wholesaler with which they had worked for twenty years. The hardware store owners had entered into a "membership agreement" with the wholesaler and one of the owners signed personal guaranty agreements. The owners accepted equipment and services from the wholesaler, which sent monthly invoices. The owners did not pay. Instead, the owners sued the wholesaler in a Kentucky state court. A few days later, the wholesaler terminated the agreement. The wholesaler then sued the owners in federal court in Illinois on the basis of diversity jurisdiction. The state court denied the wholesaler's motion to dismiss, despite the presence of a forum-selection clause in the member agreement stating that disputes should be litigated in Illinois. The federal district court declined to abstain on the basis of *Colorado River*. The Seventh Circuit affirmed the decision but reversed the district court's holding that the state and federal cases were parallel. *Id.* at 593.

In the Kentucky state court, the hardware store owners alleged fraud and fraudulent inducement. The jury found for the store owners and awarded damages. The defendant wholesaler had not counterclaimed to assert its collection claims. As a result, the jury did not decide whether some or all the amounts the hardware store owed under the contract should be subtracted from the tort damages awarded. The Seventh Circuit concluded that the district

court should have focused on whether there was a substantial likelihood that the state-court litigation would dispose of all the claims raised in the federal court.  The appellate court held that the state-court case did not dispose of the claims raised in the federal district court.  In reaching this conclusion, the appellate court rejected the argument that the state and federal cases were parallel because the wholesaler's collection claim was a compulsory counterclaim in the state action and should have been resolved there.  "[N]o authority . . . suggest[s] that a federal action is parallel to a state or foreign action for *Colorado River* abstention purposes when the claim upon which the federal action is based is pleadable as a compulsory counterclaim in the other action."  *Id.* (internal citation omitted).

Like the state-court defendant in *TruServ Corp.*, Boccard has not counterclaimed in the New Hampshire case to assert the fraudulent and negligent misrepresentation claims it asserts in the federal case.  As a result, there is not a substantial likelihood that the New Hampshire litigation will decide whether some or all of the money TigPro alleges is due under the Purchase Order should be reduced because of alleged misrepresentations in the invoices.  The New Hampshire case is a collection action that involves the question whether Boccard failed to pay for goods and services provided under the Purchase Order.  The federal case seeks a refund of amounts already paid to TigPro and involves the question whether TigPro misrepresented the goods and services provided in the invoices it issued under the Purchase Order.  The state and federal actions do not appear to be parallel.

Out of an abundance of caution, however, this opinion analyzes the *Colorado River* factors as if the actions had been found to be parallel.

### B.        Jurisdiction Over a *Res*

TigPro maintains that the New Hampshire court has assumed jurisdiction over a *res*—the Stonyfield Farm facility—because of the mechanic's lien on that property. TigPro obtained the lien in the New Hampshire suit on November 17, 2006. (Docket Entry No. 15, Ex. H).

Federal court abstention may be appropriate if a state court first exercises jurisdiction over real property. *Colorado River*, 424 U.S. at 818 (citing *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964)). The Court in *Donovan* stated that in proceedings *in rem* or *quasi in rem*, "the state or federal court having custody of such property has exclusive jurisdiction to proceed." *Donovan*, 377 U.S. at 412; *Princess Lida v. Thompson*, 305 U.S. 456 (1939). If two cases are filed in separate courts and involve *in rem* or *quasi in rem* jurisdiction over the same property, the court in which the suit was first filed obtains jurisdiction to the exclusion of all other courts. This rule avoids conflicting court orders over ownership or disposition of a piece of property.

In this federal suit, neither Boccard nor TigPro asserts a claim over the Stonyfield Farm facility. No lien is sought in this federal suit. TigPro's mechanic's lien on the property asserted in the New Hampshire case does not present the potential for a conflict between the state and federal lawsuits. *See Princess Lida*, 305 U.S. at 466 (providing for exclusive jurisdiction in the court that first assumes jurisdiction over property where (1) there are parallel cases asserting *in rem* or *quasi in rem* jurisdiction over the property, and (2) the relief sought requires that the second court exercise control over the property in dispute and the

property is already under the control of the first court); *Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000) (holding that *Princess Lida* does not apply if the federal action "does not depend on or involve exercising jurisdiction over the *res*"); *Eisenmann Corp. v. Tek-Mor, Inc.*, No. 03-C-4375, 2004 WL 547253, at *4 (N.D. Ill. Feb. 5, 2004) (the state-court plaintiff obtained a construction lien on the property at issue, but no lien was sought in the related federal action; the federal court found that there was no potential for conflicting jurisdiction over a *res* that would warrant abstention).

This Texas case involves claims for breach of contract, fraudulent and negligent misrepresentation, and unjust enrichment. There are no claims that would require this court to exercise jurisdiction over the Stonyfield Farm property. The state and federal courts are not competing for jurisdiction over a *res*. The first factor in the *Colorado River* analysis does not weigh in favor of abstention.

### C.    The Inconvenience of the Federal Forum

The second factor examines the inconvenience of the federal forum to determine whether there is "any contention that the federal forum [is] any less convenient to the parties than the state forum." *Moses H. Cone*, 460 U.S. at 19. Relevant factors are the locations where the suits are pending, the location of the evidence or witnesses, and the availability of compulsory process. *Evanston Ins. Co.*, 844 F.2d at 1191.

TigPro is a Maine corporation with its headquarters in Gray, Maine. Boccard is a Texas corporation with its headquarters in Houston, Texas. The parties' contracted for work to be performed on property located in New Hampshire. The parties' Purchase Order

designated courts in Harris County, Texas as the forum where any disputes would be litigated. The forum-selection clause states, "This Purchase Order shall be governed by and interpreted in accordance with the laws of the State of Texas.  No court proceedings pertaining to this Purchase Order may be initiated other than in federal or state courts located in Harris County, Texas, and Seller hereby consents to the jurisdiction of these courts." (Docket Entry No. 15, Ex. A).  Boccard asserts that by signing the Purchase Order, TigPro waived any objections to the inconvenience of the Texas forum.  (Docket Entry No. 15 at 8–9).  TigPro asserts that the forum-selection clause is invalid.[3]

If the forum-selection clause is valid, TigPro's contractual agreement waives objections that the venue is inconvenient or otherwise improper.  *See Nw. Nat'l Ins. Co. v. Donovon*, 916 F.2d 372, 378 (7th Cir. 1990) ("[T]he signing of a valid forum selection clause is a waiver of the right to move for a change of venue on the ground of inconvenience to the moving party."); *Hodge v. Ampere Auto. Corp.*, No. 3:01-cv-0976, 2001 WL 1478794, at *3 (N.D. Tex. Nov. 19, 2001).  Courts in the Fifth Circuit analyze the validity of forum-selection

---

[3] TigPro does not dispute that the forum-selection clause is mandatory, rather than permissive. *See City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501, 504 (5th Cir. 2004).  Mandatory forum-selection clauses require that the suit be brought only in the named forum.  A permissive forum-selection clause authorizes jurisdiction in a particular forum, but does not prohibit litigation elsewhere. *Id.* "Where the agreement contains clear language showing that jurisdiction is appropriate only in a designated forum, the clause is mandatory." *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003) (citing *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997)); *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763–64 (9th Cir. 1989) ("The prevailing rule is clear from these and other cases that where venue is specified with mandatory language[,] the clause will be enforced.").  The wording of the forum-selection clause at issue shows that it is mandatory because it demonstrates the parties' intent to make the designated forum exclusive. *See Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 14–15 (5th Cir. 1995) (finding mandatory a forum-selection clause stating: "This contract shall be interpreted and construed in accordance with the laws of the State of Texas. The legal venue of this contract and any disputes arising from it shall be settled in Dallas County, Texas.").

clauses under federal law, regardless of whether jurisdiction is based on diversity or a federal question.[4]  *See Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997); *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996).

Under federal law, forum-selection clauses are presumptively valid.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) (citing *THE BREMEN v. Zapata Offshore Co.*, 407 U.S. 1, 15 (1972) ("[A] freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect. . . . A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.")); *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) ("The Supreme Court has consistently held forum-selection and choice-of-law clauses presumptively valid.").  An opposing party may show that enforcement would be unreasonable.  *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995).  A forum-selection clause may be unreasonable if it is the product of fraud or overreaching or would contravene a strong public policy of the forum.

---

[4]  The circuits are divided on whether enforcement of a forum-selection clause is procedural and governed by federal law or substantive and governed by state law.  The Second, Fifth, and Ninth Circuits refer to federal law when considering motions to dismiss predicated on forum-selection clauses.  *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990); *Int'l Software Sys. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988).  The Third Circuit has applied state law.  *General Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 357 (3d Cir. 1986).  The Fourth Circuit in an unpublished opinion has applied state law without explanation.  *Nutter v. New Rents, Inc.*, No. 90-2493, 1991 WL 193490, at *5–6 (4th Cir. 1991).  Other circuits have declined to take a position on the question.  *Lambert v. Kysar*, 983 F.2d 1110, 1116 (1st Cir. 1993); *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir. 1990); *1202 M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 n.4 (8th Cir. 1999).

*See Carnival Cruise Lines*, 499 U.S. at 595; *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998); *LFC Lessors v. Pac. Sewer Maint. Corp.*, 739 F.2d 4, 6 n.1 (1st Cir. 1984).

TigPro does not assert fraud or overreaching and there is no evidence of either.  TigPro does argue that a clear public policy of both New Hampshire and Texas would be undermined if the forum-selection clause is enforced.  There are two problems with this argument.  First, the issue is whether the clause violates a public policy of the forum in which suit is brought; that forum is Texas, not New Hampshire.  Second, neither Texas nor New Hampshire has adopted statutes or issued opinions that reflect a clear public policy against enforcing this forum-selection provision.

TigPro cites a Texas statute that provides that "[i]f a contract is principally for the construction or repair of improvements to real property located in this state and the contract contains a provision that makes the contract or any conflict arising under it subject to the law of another state, to litigation in the courts of another state, or to arbitration in another state, that provision is voidable by the party that is obligated by the contract to perform the construction or repair."  TEX. BUS. & COM. CODE § 35.52(a).  This statute applies to construction or repair of improvements to real property located in Texas.  *See* TEX. BUS. & COM. CODE § 35.52(b).  The Stonyfield Farm property is in New Hampshire.  The public policy reflected in this statute only addresses work performed on property within Texas.

The facts are similar to those in *Nelson v. CGU Ins. Co.*, No. 02-193-BS, 2003 WL 1856439, at *3 (D. Me. Apr. 10, 2003), which also involved a challenge to a contractual

forum-selection clause.  In *Nelson*, the forum state had a statute that made forum-selection policies in certain insurance contracts unenforceable.  The statutory sections did not, however, apply to insurance policies that were issued for delivery outside the forum state.  The court did not extend the public policy reflected in that statute to other insurance policies.  Similarly, the Texas venue provision in section 35.52 does not apply to construction contracts involving construction outside Texas and does not reflect a public policy invalidating forum-selection clauses in such contracts.  Even if there is a public policy concern reflected in section 35.52, it is not sufficiently clear or strong to outweigh the strong public policy in favor of forum-selection clauses.  *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993).  Public policy concerns abrogate a contracted-for forum-selection clause only in exceptional circumstances.  *Stewart Org., Inc. v. Richoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

TigPro also relies on the New Hampshire statute governing contractual venue provisions.  The statute states:

> If the parties have agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court will dismiss or stay the action, as appropriate, unless:
>
> I.  The court is required by statute to entertain the action;
>
> II.  The plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action;
>
> III.  The other state would be a substantially less

> convenient place for the trial of the action than this state;
>
> IV.    The agreement as to the place of the action was obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; or
>
> V.    It would for some other reason be unfair or unreasonable to enforce the agreement.

N.H. REV. STAT. § 508-A:3.  This statute does not reflect a New Hampshire policy against the forum-selection clause at issue here.  The New Hampshire statute under which TigPro attached the mechanic's lien to the Stonyfield Farm property does not forbid the continued prosecution of this Texas action, in which no lien is asserted or sought.[5]  Moreover, the mere identification of claims "under laws not recognized by the forum selected in the agreement" does not suffice to defeat a forum-selection clause.  *Haynsworth v. The Corporation*, 121 F.3d 956, 969 (5th Cir. 1997) (citing *Roby*, 996 F.2d at 1360).  There is no provision in this New Hampshire statute that would make a forum-selection clause such as the one at issue unenforceable in a case such as this, which involves construction work in New Hampshire.

---

[5]  That statute provides:

> If a person shall by himself or others perform labor or furnish materials to the amount of $15 or more for any of the purposes specified in RSA 447:2, 447:3 and 447:4 and in RSA 453, by virtue of a contract with an agent, contractor or subcontractor of the owner, he shall have the same lien as provided in said sections, provided, that he gives notice in writing to the owner or to the person having charge of the property that he shall claim such lien before performing the labor or furnishing the material for which it is claimed.

N.H. REV. STAT. 447:5.

Because the forum-selection provision is enforceable, TigPro has waived its objection to the inconvenience of this forum.  This factor does not weigh in favor of abstention.

### D.      Avoidance of Piecemeal Litigation

The consideration that was "paramount in *Colorado River* itself" was the "danger of piecemeal litigation." *Moses H. Cone*, 460 U.S. at 19.  "The prevention of duplicative litigation is not a factor to be considered in an abstention determination." *Evanston Ins. Co. v. Jimco, Inc*., 844 F.2d 1185, 1192 (5th Cir. 1988).  "*Duplicative* litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping jurisdiction.  The real concern at the heart of [this factor] is the avoidance of *piecemeal* litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650–51 (5th Cir. 2000).  Of all the factors, this weighs most heavily in favor of abstention.  Because the New Hampshire state court has decided that the forum-selection provision is invalid or unenforceable, there is a risk that this case will be adjudicated in state and federal courts.  Despite the contractual Texas choice-of-law provision, the case may be adjudicated under both New Hampshire and Texas law.[6]  Nonetheless, the risk of piecemeal litigation is low, given the different issues and claims raised in the two cases.  And, as noted above, this federal suit does not involve a claim requiring jurisdiction

---

[6] This risk is less certain given the recent action taken by the New Hampshire Superior Court.  On June 4, 2007, the New Hampshire Superior Court granted Boccard's motion for an interlocutory review by the New Hampshire Supreme Court of the Superior Court's denial of the motion to dismiss.  (Docket Entry No. 17).  To this court's knowledge, the New Hampshire Supreme Court has not issued a decision on the appeal.

over the Stonyfield Farm property.

In most cases, the enforcement of the forum-selection clause avoids potentially duplicative or even piecemeal actions from becoming an actual problem.  *Cf. Hy Cite Corp. v. Advanced Mktg. Int'l, Inc.*, No. 05-C-722-S, 2006 WL 3377861, at *5 (W.D. Wis. Apr. 10, 2006) ("Enforcing the forum selection clause is the clearest way to avoid the multiple and conflicting rulings plaintiffs fear will occur.").  In most cases in which a federal court denies a *Colorado River* motion and enforces a forum-selection clause, the state court has not indicated its intention to proceed despite the forum-selection clause.  *See, e.g.*, *ELA Med., Inc. v. Arrhythmia Mgmt. Assocs., Inc.*, No. 06-3580, 2007 WL 892517, at *12 (D. Minn. March 21, 2007) ("[T]his court does not anticipate that both courts would insist on resolving this action knowing the other is doing the same, particularly where the Contract provides for such litigation here . . . .").

There are, however, cases in which a federal court has declined to abstain on the basis of *Colorado River* despite the risk that the state court considering the parallel case might decline to enforce a clause selecting the federal-court forum and choosing the law of that forum.  In *Oldcastle Precast, Inc. v. Sunesis Construction Co.*, No. 5:07-81-JMH, 2007 WL 1655380 (E.D. Ky. June 6, 2007), the parties, a general and subcontractor, entered into an agreement for construction work.  The agreement contained a mandatory Kentucky choice-of-forum clause.  After a dispute arose, suit was brought in an Ohio state court.  Five days later, the state-court defendant filed suit in federal court in Kentucky.  The state-court defendant moved to dismiss that case based on the Kentucky choice-of-forum clause, while the federal-

court defendant (the state-court plaintiff) filed a motion to dismiss in the federal court based on *Colorado River*. When the federal court issued its opinion, the state court had not yet decided whether to enforce the forum-selection clause and dismiss the suit. The federal court noted that if the state court found that the forum-selection clause was invalid and unenforceable, there would be a significant chance that the case would be litigated in state court under Ohio law and in federal court under Kentucky law. The federal court nonetheless declined to abstain. "Although there is a high risk of piecemeal litigation in this case, the Court will honor the forum-selection and choice-of-law provisions to which the two sophisticated businesses agreed." *Id.* at *5. Notably, there was no *res* at issue in either the federal or state suits.

As analyzed above, the state collection action and the federal refund/misrepresentation action raise different issues, although they arise out of a common set of facts. The risk of piecemeal litigation is not as high as TigPro argues. Although the federal suit will not resolve the claims TigPro has asserted against Stonyfield Farm, as noted earlier, there is no risk of this court and the New Hampshire Superior Court issuing conflicting decisions as to the Stonyfield Farm property. "While duplicative litigation is permitted, *Colorado River* prevents piecemeal litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property. . . . [A] plea of res judicata after the completion of one suit could eliminate the problem of inconsistent judgments." *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006) (internal citations and quotation marks omitted). The "piecemeal litigation" factor does not weigh in favor of establishing "exceptional circumstances" warranting abstention.

24

### E.      The Order in Which Jurisdiction Was Obtained

The order in which jurisdiction was obtained "'should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'"   *Evanston*, 844 F.2d at 1190 (quoting *Moses H. Cone*, 460 U.S. at 21). TigPro filed suit in New Hampshire on November 16, 2006.  Boccard filed the federal action only two weeks later, on November 30, 2006.  TigPro maintains that the state-court suit is further advanced because that court has already ruled on Boccard's motion to dismiss and has entered a scheduling order setting the case for trial the week of March 3, 2008.  (Docket Entry No. 9, Ex. E).  On December 29, 2006, TigPro propounded requests for production to Boccard and Stonyfield Farms in the New Hampshire action and on January 4, 2006 deposed a third-party witness.  (Docket Entry No. 16, Exs. A–C).  The record does not indicate that any additional discovery has been conducted.   Contrary to TigPro's contention, the New Hampshire case is not significantly more advanced than this case.  The New Hampshire case was filed only two weeks before the federal suit.  The trial setting in the state-court case is nearly one year away and very little discovery has been completed.  Moreover, on June 4, 2007, the New Hampshire Superior Court granted Boccard's motion for interlocutory review of the motion to dismiss by that state's Supreme Court.  This appeal will likely delay the state suit pending a decision by the New Hampshire Supreme Court.  The fourth factor does not weigh in favor of abstention.

### F.      The Impact of Federal Law

The fifth factor asks whether and to what extent federal law provides the rule of

decision on the merits.  There are no federal-law claims in this case.  "The absence of a federal law issue does not counsel in favor of abstention . . . . The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender only in rare circumstances." *Evanston Ins. Co.*, 844 F.2d at 1193 (quoting *Moses H. Cone*, 460 U.S. at 26).  The fifth factor does not weigh in favor of abstention.

### G.   Protecting the Litigants' Interests

The sixth factor asks whether the state-court action will adequately protect the rights of the federal-court plaintiff, Boccard.  This factor "can only be a neutral factor or one that weighs against, not for, abstention.  A party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still pursue the action there since there is no ban on parallel proceedings." *Evanston Ins. Co.*, 844 F.2d at 1193.  The sixth factor does not weigh in favor of abstention.

## IV.   Conclusion

After determining that this suit and the New Hampshire state-court action are not parallel and carefully balancing the relevant factors, this court does not find that abstention is warranted under *Colorado River*.  The motion to dismiss or stay is denied.

SIGNED on July 2, 2007, at Houston, Texas.

Lee H. Rosenthal
United States District Judge